[3] *Commonwealth v. Spencer,* 442 Pa. at 336 (1971).
[4] 412 F. 2d at 418-19.

## Commonwealth *v.* Williams, Appellant.

Submitted March 17, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Anne Welsh* and *John W. Packel,* Assistant Defenders, and *Vincent J. Ziccardi,* Defender, for appellant.

*Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, June 30, 1971:

The Commonwealth concedes the appellant was improperly sentenced for both possession and sale of drugs. Judgment of sentence reversed and the record remanded to the court below for correction of sentence. *Commonwealth ex rel. Ciampoli v. Heston,* 292 Pa. 501, 141 Atl. 287 (1928).

---

CONCURRING AND DISSENTING OPINION BY SPAULDING, J.:

Appellant, Bernard Williams was tried and convicted of possession and sale of narcotic drugs, by the Hon-

orable JOSEPH C. BRUNO of the Court of Common Pleas of Philadelphia, sitting without a jury. He was sentenced from two to five years on the possession count and from two to ten years on the sale count, the sentences to run concurrently. His motions for a new trial and in arrest of judgment were denied. This appeal followed.

Initially, the Commonwealth concedes that appellant was improperly sentenced since the possession and sale offenses were aspects of the same transaction and thus merged. Appellant may be sentenced on only one count where possession and sale offenses are charged in separate counts of an indictment. The two to five year sentence imposed on the possession count, at Bill No. 875, July Sessions, 1969, is vacated. *Commonwealth ex rel. Ciampoli v. Heston,* 292 Pa. 501, 141 Atl. 287 (1928). *Commonwealth v. Phillips,* 215 Pa. Superior Ct. 5, 257 A. 2d 81 (1969). I therefore concur in remanding the record for correction of sentence.

In addition, the record indicates that appellant's arrest was effected through the combined efforts of an undercover agent of the Philadelphia Police Department, Fred Thrift, and a paid informer, Harvey Axelrod. Axelrod was not made available to the defense at trial and appellant alleges that this was error. To understand the significance of this informer, it is necessary to set forth briefly the factual background. In this regard, two contradictory versions were presented at the trial. The Commonwealth's version of the facts is as follows: On April 15, 1969, Axelrod and Officer Thrift went to the northwest corner of 15th and Westmoreland where they saw appellant standing among a group of men. Axelrod approached appellant to determine whether he had any heroin to sell and returned to Officer Thrift with an affirmative response. Thrift then made a similar request and was directed by appel-

lant to a less crowded corner (Broad and Allegheny) where the sale allegedly took place.

Appellant's testimony, however, varied significantly in regard to each of the above occurrences. According to his version, Axelrod had been asking for heroin every day for a two-week period prior to the actual transaction. Appellant raised the defense of entrapment in that he averred that he was in fact entrapped by Axelrod into making a sale.

During trial, defense counsel made three requests that the Commonwealth produce its informer, who had since disappeared. As appellant had raised the entrapment defense and asserted that Axelrod was an eyewitness, he argued that the latter's presence in court was necessary to the defense. When questioned on cross-examination concerning the efforts made to locate Axelrod, Officer Thrift stated that "efforts have been made to get him, but we were unable to locate him." The court denied each defense request to order the Commonwealth to produce Axelrod.

In *Commonwealth v. Carter,* 427 Pa. 53, 233 A. 2d 284 (1967), our Supreme Court held that the Commonwealth has a duty to disclose the identity and whereabouts of an eyewitness-informer where that information is not known to the accused. In the instant case, although the informer's identity and address were known to both appellant and the Commonwealth, neither party knew his present whereabouts.[1]

It is impossible for me to see how in Axelrod's absence, the lower court could be fairly and adequately equipped to determine the only factual issue in dispute —whether or not appellant had been entrapped. The only person, except appellant who could have shed light

---

[1] There is no indication that the Commonwealth made any attempt to keep in contact with Axelrod or utilize its numerous resources to locate him.

on this issue was Axelrod, an alleged eyewitness.[2] Although both parties' credibility were certainly subject to attack, if the informer had been located and subpoenaed, he may have admitted certain aspects of appellant's testimony. If he disputed that version and sided with the police, the lower court could ably have weighed the comparative credibility, taking into consideration the inherent biases of both parties. *Carter* is based on the premise that the disclosure of an eyewitness-informer's identity will enable the production of a witness whose testimony is deemed essential to the fair determination of the truth. In the instant case, it is undisputed that both parties knew the identity of the informer. However, that information is of little if any value, if appellant or the court itself was otherwise unable to compel his presence. Upon timely motion, it is my opinion that the Commonwealth was obliged to either produce the informer or to make a reasonable effort to obtain and supply to appellant such information as would enable him to bring the informer before the court.[3] To hold otherwise, would have the practical effect of non-disclosure and would violate the rationale behind *Carter*.

It is, of course, the Commonwealth's choice whether or not to utilize informers in an individual case. However, when it does choose to involve one of its informers in the perpetration of a crime, fundamental fairness demands that the State assume obligations consistent

---

[2] I agree with appellant's contention that where an accused asserts the informer's presence and direct participation in a sale and where the Commonwealth concedes that the informer "set up" that sale, the requirements of *Carter* cannot be circumvented by the Commonwealth's mere assertion that the informer was not in fact present. The very reason for the *Carter* rule was the reluctance to rely solely on police testimony where more impartial testimony was available.

[3] The "reasonable effort" required would, of course, depend on the facts of each case.

with that involvement. Here it was quite clear to the prosecution that appellant would rely on the entrapment defense and that Axelrod's testimony would be essential to the fair determination of that issue.

I would remand the record at Bill No. 875, July Sessions, 1969, for a hearing to determine whether in fact the Commonwealth did make a reasonable effort to locate Axelrod. Should the Commonwealth sustain that burden, relief would be denied. In the event that it did not, appellant should be granted a new trial.